UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,
f/u/b/o DURA-STRESS, INC.

        Plaintiff,

vs.                             Case No. 6:05-cv-549-Orl-19JGG

DAVID BOLAND, INC., CLANCY
& THEYS CONSTRUCTION CO.,
TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
SEABOARD SURETY COMPANY,
and ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

        Defendants.
_____

## ORDER

This case comes before the Court on the following:

1.     Motion for Summary Final Judgment and Incorporated Memorandum of Law, filed by Defendants David Boland, Inc., Clancy & Theys Construction Co., Travelers Casualty and Surety Company of America, Seaboard Surety Company, and St. Paul Fire and Marine Insurance Company (collectively "Boland") on June 16, 2006; (Doc. No. 47);

2.     Appendix to Motion for Summary Final Judgment and Incorporated Memorandum of Law, filed by Boland on June 16, 2006; (Doc. No. 48);

3.     The Deposition of Kim Kicklighter, filed by Boland on June 16, 2006; (Doc.

No. 49);

4.      The Deposition of Kent Fuller, filed by Boland on June 16, 2006; (Doc. No. 50);

5.      The Deposition of John N. Puder, filed by Boland on June 16, 2006; (Doc. No. 51);

6.      Request for Oral Argument, filed by Boland on June 16, 2006; (Doc. No. 52); and

7.      Memorandum in Opposition to Defendants' Motion for Summary Final Judgment, filed by Plaintiff Dura-Stress, Inc. ("Dura-Stress") on July 18, 2006.  (Doc. No. 58).

## Background

The instant Miller Act dispute arises out of problems and delays encountered during the construction of an operations support building at the John F. Kennedy National Aeronautics and Space Administration ("NASA") Space Center in Cape Canaveral, Florida. (hereinafter "the project").   Defendants David Boland, Inc., Clancy & Theys Construction Co., Travelers Casualty and Surety Company of America, Seaboard Surety Company, and St. Paul Fire and Marine Insurance Company (collectively "Boland") seek summary judgment on both counts of the Complaint, arguing that there are no genuine issues of material fact and that Boland is entitled to judgment as a matter of law.  For the reasons that follow, the Court finds that summary judgment is not warranted in the case at bar.

The following facts are not in dispute.  In December of 2002, David Boland Inc. ("DBI") entered into a written agreement with the United States of America to be the

primary contractor for the construction of the project known as the "Operations Support Building II." (*See, e.g.,* Doc. No. 1, ¶ 10; Doc. No. 19, ¶ 10). A valid payment bond issued by co-Defendant Travelers Casualty and Surety Company of America was delivered to NASA as security for DBI's payments to its subcontractors. (*See, e.g.,* Doc. No. 1-2). The awarding of the job to DBI was not without controversy; a bid protest by DBI and related litigation over the proper recipient of the contract delayed the start of the project by several months. (*See, e.g.,* Doc. No. 47, p. 4; Doc. No. 48-2, ¶ 5; Doc. No. 58-1, p. 3).

On June 9, 2003, DBI entered into a written subcontract agreement with Dura-Stress, Inc. (Dura-Stress) for the design, fabrication, and erection of precast concrete panels to be used in conjunction with the project. (*See, e.g.,* Doc. No. 1, ¶ 18; Doc. No. 19, ¶ 18). The subcontract agreement contained a "no damages for delay" provision providing that DBI would not be liable for any damages arising out of delays caused by its negligent acts or omissions in conjunction with the project. (*See* Doc. No. 1-6, p. 6). In order to correctly design and create the panels, Dura-Stress on numerous occasions beginning in May of 2003 submitted Requests for Information ("RFIs") regarding the dimensions, elevation, and load requirements pertinent to the project. (*See, e.g.,* Doc. No. 47, pp. 5-7; Doc. No. 58-1, pp. 4-5). Dura-Stress would submit the RFIs to DBI, which would forward the RFIs to NASA if it could not answer them itself, and DBI would subsequently forward NASA's response back to Dura-Stress. Dura-Stress also had the responsibility to submit fabrication and installation drawings to NASA through the primary contractor, DBI. Dura-Stress sent its first submission of drawings to NASA in July 2003, which NASA returned to Dura-Stress for corrections in August. (*See, e.g.,* Doc. No. 47, pp. 7-8; Doc. No. 58-1, p. 4). In response to

-3-

a request by NASA that Dura-Stress needed to correct and resubmit the drawings, DBI and Dura-Stress submitted written comments to each other regarding issues that needed to be addressed during and after the resubmission process.  (*See, e.g.,* Doc. No. 47, pp. 7-9; Doc. No. 58, pp. 3-5).

In late 2003, the project fell further behind schedule, although the parties disagree as to who was responsible for the additional delays.[1]  Animosity between the parties grew, and as a result DBI assigned and transferred its rights and obligations as primary contractor to co-Defendant Clancy & Theys Construction Company on February 2, 2004.  (*See, e.g.,* Doc. No. 1-1, ¶¶ 28-33; Doc. No. 19, ¶¶ 28-33).  Co-Defendants Travelers Casualty and Surety Company of America and Seaboard Surety Company issued a valid payment bond as security for Clancy & Theys.  (*See, e.g., id.*).

After the assignment had been completed, NASA, Dura-Stress, and Clancy & Theys attended a meeting where the remaining issues surrounding the RFIs were resolved.  (*See, e.g.,* Doc. No. 49, p. 70).  However, because the project had fallen behind schedule, the actual completion date of Dura-Stress's portion of the project, August 19, 2004, was 177 days after the projected completion date.  (*See, e.g.,* Doc. No. 1-10; Doc. No. 58-1, p. 5).  As a result of such delay, Dura-Stress submitted a Request for Equitable Adjustment to

---

[1]     The parties do agree, however, that the delay was caused in part by disagreements between NASA and DBI's piling subcontractor, John Puder.  Some piling work had to be completed by Puder before Dura-Stress could perform its portion of work on the project, and the piling installation ran into numerous difficulties causing a cessation of piling work for extended periods of time.  (*See, e.g.,* Doc. No. 48, pp. 9-10; Doc. No. 58-1, pp. 14-16).  The parties disagree, however, as to what part, if any, Boland played in the difficulties surrounding the piling installation.  (*See id*.).

Boland in June of 2004.  (*See id.*).  Boland denied Dura-Stress's claim, stating that it found no basis for an equitable adjustment because the subcontract agreement contained a "no damages for delay" provision.  (*See* Doc. No. 58-5).  It also rejected Dura-Stress's contention that DBI caused delays by engaging in "active interference" during the course of the project, an exception to the "no damages for delay" provision in the agreement.  (*See, e.g., id.*).  Dura-Stress then filed the instant suit against Boland.

In its Complaint, Dura-Stress seeks damages it suffered as a result of the delay under the theories of equitable adjustment and breach of contract.  (*See generally* Doc. No. 1-1).  Dura-Stress alleges that Boland was responsible for the delays in question by, *inter alia*, failing to timely and adequately respond to Dura-Stress's RFIs and comments, failing to timely forward NASA's responses to Dura-Stress's RFIs, and failing to adequately address the substandard work of its piling subcontractor, John Puder.  (*See generally* Doc. Nos. 1-1, 58-1).  Boland argues in its Motion for summary judgment that it is entitled to judgment as a matter of law, as the facts clearly demonstrate that DBI did not engage in active interference, Dura-Stress has failed to exhaust administrative and civil remedies, and NASA has released Boland from liability.  Dura-Stress responds that issues of fact remain regarding Boland's active interference, that administrative remedies have been exhausted, and that Boland's release argument is without merit.

### Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there

must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)). All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

## Analysis

### A.  Request for Oral Argument

Boland requests the Court to permit oral argument on Boland's Motion for summary judgment.  After reviewing the record, the Court determines that oral argument is not necessary to determine a resolution to the issues set forth in the Motion.  Thus, Boland's request for oral argument (Doc. No. 52) is denied.

### B.  Active Interference and Breach of Contract

Summary judgment is not warranted on Dura-Stress's active interference and breach of contract claims.  In Miller Act suits, state law governs whether a contractor materially breached a contract or engaged in active interference with respect to a contractual obligation.

-7-

*See, e.g., U.S. f/u/b/o Seminole Sheet Metal Co. v. SCI, Inc.*, 828 F.2d 671, 675 (11th Cir. 1987).  Florida courts recognize "no damages for delay" clauses in construction contracts, but will not permit such clause to bar recovery if the delays were occasioned by the contractor's fraud, concealment, or active interference with the subcontractor's performance under the contract.  *See, e.g., Seminole,* 828 F.2d at 675; *Marriott Corp. v. Dasta Constr. Co.*, 26 F.3d 1057, 1067-68 (11th Cir. 1994); *Southern Gulf Util., Inc. v. Boca Ciega Sanitary Dist.*, 238 So. 2d 458, 459 (Fla. 2d DCA 1970).  Florida courts have held that such actions bar recovery  under a "no damages for delay" clause because every contract containing this clause is premised upon an "implied promise and obligation not to hinder or impede performance."  *Newberry Square*, 578 So. 2d at 752.

Active interference may be characterized as a "knowing delay" which is "sufficiently egregious."  *See Southern Gulf,* 238 So. 2d at 459;  *Newberry Square Dev. Corp. v. Southern Landmark, Inc.*, 578 So. 2d 750, 752 (Fla. 1st DCA 1991).  "Mere lethargy" or instances of "bureaucratic bungling" is insufficient as a matter of law to overcome a valid no damages for delay clause.  *See Triple R Paving, Inc. v. Broward County*, 774 So. 2d 50, 55 (Fla. 4th DCA 2000) (quoting *Southern Gulf*, 238 So. 2d at 458).  Because this issue is highly case-specific and fact intensive, many courts have stated that whether a party has actively interfered with another party's contractual obligation is a question usually inappropriate for resolution at the summary judgment stage.  *See, e.g., Dennis Stubbs Plumbing, Inc. v. Travelers Cas. and Surety Co. of Am.,* 67 Fed.Appx. 789, 792-93 (4th Cir. 2003) (facts alleged in case were weak yet sufficient enough to overcome summary judgment on issue of active interference) (per curiam); *Triple R Paving,* 774 So. 2d at 55 (holding that although

interference was less severe than that in *Newberry Square*, question of active interference regarding design flaw was properly submitted to the jury); *Novak & Co., Inc. v. New York City Hous. Auth.,* 480 N.Y.S.2d 403, 411 (Sup. Ct. 1984) (summary judgment on active interference particularly disfavored whether courts employ an objective or subjective inquiry).

In the instant case, Dura-Stress argues that DBI's actions amount to breach of contract and active interference with Dura-Stress's obligations under the contract. The Court finds that the existence of several key issues of fact precludes summary judgment on these claims.

First, Boland has not met its burden of demonstrating that there is no genuine issue of material fact with regard to whether DBI timely and adequately responded to Dura-Stress's RFIs. Specifically, Dura-Stress alleges that DBI engaged in active interference by repeatedly failing to forward, process, and return RFIs for which an answer was sought by NASA and by failing to respond to RFIs which it could answer itself. (*See, e.g.,* Doc. No. 1-1). Boland argues that summary judgment is warranted because DBI was not responsible for the adequacy and sufficiency of the RFIs and the evidence demonstrates that it timely forwarded RFIs from Dura-Stress to NASA and back. (*See* Doc. No. 47, pp. 14-15).

In support of its arguments, Boland relies on the declaration of Allen Bales, Vice President of Operations for DBI and the Construction Manager for the project. (*See* Doc. No. 48-2). Bales testifies that his analysis of the RFIs at issue demonstrates that an "average" RFI was forwarded to NASA 3.2 days after its receipt and returned to Dura-Stress 4.4 days after it was answered by NASA. The average number of days NASA took to

-9-

answer an RFI was 11.9 days.  As Dura-Stress points out, however, Bales's declaration provides no details as to what parameters and standards he used in conducting such conclusory analysis.  In addition, under Florida contract law, the question of what constitutes a reasonable time is generally a question of fact contingent on an analysis of a variety of factors; one party's interpretation of what is reasonable under the circumstances is not controlling.  *See, e.g., Cocoa Properties, Inc. v. Commonwealth Land Title Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991).

Furthermore, an analysis of the record demonstrates that several "outliers," or RFIs which were unanswered for extended periods of time well past the "average" response time, are present.  For instance, DBI took 47 days to forward a response to Dura-Stress's RFI No. 55, a period of time much larger than the "average" response time of 19.5 days.  Kim Kicklighter, the project manager for Dura-Stress, testified that RFI No. 55 was a very important RFI dealing with load requirements.  (*See* Doc. No. 49, pp. 23, 28-31).  In addition, Thomas Burke, an expert witness for Dura-Stress,  testified that the average response time makes no difference in determining whether DBI actively interfered with Dura-Stress's contractual obligations.  (*See, e.g.,* Doc. No. 58-7, p. 48).  Thus, viewing all facts in the light most favorable to Dura-Stress and construing all reasonable inferences against Boland, the Court finds that issues of fact remain with regard to the active interference and breach of contract claims.

Even if no issue of fact existed with regard to DBI's handling of the RFIs, several additional issues of fact are present which preclude summary judgment.  First, an issue of fact exists as to whether DBI actively interfered with Dura-Stress's obligations under the

subcontract agreement by knowingly contributing to a lengthy delay in the installation of the pilings. John Puder, the subcontractor in charge of the piling work, was required to complete the installation of the pilings before Dura-Stress could perform its obligations under the contract. (*See, e.g.,* Doc. No. 50, p. 46). Boland concedes that there was a delay with respect to the piling subcontractor, but argues that such delay was attributable to Puder and NASA and was wholly unrelated to Dura-Stress's performance. (*See, e.g.,* Doc. No. 47, p. 19). However, Puder testified that DBI initially failed to ensure proper site elevation, failed to move a sewer line which went across the site, and failed to ensure that water was removed from the site prior to the commencement of Puder's piling activities. (*See, e.g.,* Doc. No. 51, pp. 8-9, 18-19). This caused several weeks of delays in Puder's operations, which in turn delayed Dura-Stress's ability to commence its contractual obligations under the subcontract agreement.

Lastly, communications in the record between NASA and DBI create an issue of fact as to whether DBI violated its implied obligation not to obstruct Dura-Stress's performance under the contract. NASA wrote to DBI on March 31, 2003 that its poor performance was seriously jeopardizing its obligations under the primary contract. (*See* Doc. No. 58-9, p. 4). NASA described DBI on June 25, 2003 as having a "cavalier attitude" and noted that it failed to demonstrate an understanding or appreciation of NASA's concerns. (*Id*. at p. 7; *See also id.* at pp. 10-11). In January of 2004, NASA stated that DBI's performance was substandard "in almost all aspects of the job" and that it suffered from a lack of diligence in its performance of all major tasks on the project. (*See id*. at pp. 18-19). Finally, NASA openly questioned DBI's ability and willingness to complete performance on time. (*See id*.

at pp. 18, 22).   NASA added that many of DBI's deficiencies were "significant" and "recurring" and that it resisted efforts to correct them in a timely manner.   (*See id.* at p. 22).

In construction contract law, an owner has an implied obligation not to hinder or obstruct performance by the other person, an implied obligation not to knowingly delay unreasonably the performance of duties under the contract.   *See, e.g., Ajax Paving Indus., Inc. v. Charlotte County*, 752 So. 2d 143, 144-45 (Fla. 2d DCA 2000); *Southern Gulf*, 238 So. 2d at 459.   Viewing all facts in the light most favorable to Dura-Stress and construing all reasonable inferences against Boland, the Court finds that issues of fact remain regarding whether DBI unreasonably delayed Dura-Stress's obligations under the contract.

### C.  Administrative Remedies and Release

Boland contends that summary judgment is warranted in the case at bar because Dura-Stress has failed to exhaust its administrative remedies and because NASA has released Boland of all claims arising from its performance.   These arguments are not well taken.

First, Boland has not met its burden of proving that no genuine issue of material fact exists regarding whether Dura-Stress sufficiently attempted to exhaust its administrative remedies under the subcontract agreement.   Paragraphs 16A and 16B of the agreement require Dura-Stress to first pursue and exhaust administrative and civil remedies before commencing an action against the primary contractor.   (*See* Doc. No. 1-6, pp. 6-7). However, the record demonstrates that Dura-Stress attempted to comply with paragraphs 16A and 16B by filing a Request for Equitable Adjustment with DBI and Clancy & Theys. (*See, e.g.,* Doc. No. 58-5).  DBI rejected such request outright on August 2, 2004, replying

that "there is no basis for equitable adjustment" under the contract. (*See id.* at p. 3). Boland provides no other evidence of communication between the parties regarding the administrative remedies portion of the agreement. Without the support, and indeed with the outright rejection of its claim for an equitable adjustment by the primary contractor, pursuing additional administrative remedies may have been a useless act. The law is clear that a party is not required to perform a useless act. *See, e.g., MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344 (6th Cir. 2002).

Finally, Boland's argument that a release between NASA, DBI, and Clancy & Theys bars the instant claims is without merit. There are no provisions under the agreement or under the Miller Act which would allow Boland to use NASA's release to extinguish the rights of Dura-Stress, a non-party to the agreement, and Boland cites no authority for such proposition. (*See* Doc. No. 47, p. 18). For these reasons, the Court will deny Boland's Motion for Summary Final Judgment.

### Conclusion

Based on the foregoing, the Motion for Summary Final Judgment and Incorporated Memorandum of Law, filed by Defendants David Boland, Inc., Clancy & Theys Construction Co., Travelers Casualty and Surety Company of America, Seaboard Surety Company, and St. Paul Fire and Marine Insurance Company (collectively "Boland") on June 16, 2006, (Doc. No. 47), and the Request for Oral Argument filed by Boland on June 16, 2006, (Doc. No. 52), are **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _16th_ day of September,

2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record